STATE OF NEBRASKA, APPELLEE, V. LAURIE J. SASSEN, APPELLANT.
484 N.W.2d 469

Filed May 29, 1992.    No. S-90-587.

James Martin Davis for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

In this case defendant, Laurie J. Sassen, was charged by information with unlawful possession of a controlled substance. Defendant was convicted of the charge by the judge, sitting without a jury. Defendant was sentenced to 1 to 2 years in prison, with credit given for time served. Defendant timely appealed, assigning as error the admission of evidence seized without a warrant and of statements made by defendant, both of which were "the fruits of an unlawful arrest." We find that the defendant's arrest was lawful and affirm her conviction.

In reviewing a criminal conviction, the Supreme Court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and the verdict will be affirmed, in the absence of prejudicial error, if properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Timmerman, ante* p. 74, 480 N.W.2d 411 (1992). Viewed in that light, the record shows the following:

At approximately 1:15 a.m. on December 13, 1989, while assisting with a traffic stop at 52nd and Country Club in Omaha, two police officers observed a Pontiac Sunbird with no front license plate. They then observed that the Sunbird had a rear license plate, but it was a dealer plate, and it was covering what appeared to be a regular license plate. The rear window of the Sunbird was covered with snow, so that one could not see in or out. The officers stopped the Sunbird at 58th and Blondo in Omaha, Douglas County, Nebraska. As the officers were approaching—Officer Carmody on the driver's side and Officer Bakker on the passenger side—the passenger door opened. The defendant was the only occupant of the car.

Officer Carmody tried to talk to defendant through the driver's window, but defendant said that neither the driver's door nor window would open, so she spoke to Officer Bakker, who was by the passenger side. Carmody checked the driver's door later and found it would not open. When asked for identification and proof of ownership, defendant responded

that she did not have a driver's license and that the car did not belong to her. She identified herself as Laurie Sassen.

The officers saw a plastic, zippered bank bag with the name "Bennington Bank" printed on it lying on the seat next to defendant. Officer Bakker asked defendant what the bag contained, but he did not ask her to open it. In response, defendant opened the bag and began taking cosmetics from it. Defendant was holding the bag close to her so that Officer Bakker, from the passenger side, could not see into it. Officer Carmody, by looking through the window on the driver's side, saw that defendant was holding a gray plastic object up against the back of the bag with her thumb while she took other items out. The gray plastic object was later determined to be a scale with a powdery substance on it, but the officers did not know that it was a scale at the time.

Carmody also saw a syringe in the bag. He told Bakker that he had seen a syringe and to ask defendant to step out of the car. When Bakker asked her to get out of the car, defendant picked up the syringe and "looked around as if she was confused." When Bakker again asked defendant to leave the car, defendant threw the syringe on the floor. Carmody testified that it was an ordinary prescription drug syringe with an orange plastic cap over the needle. He could not see any residue on the syringe.

When defendant got out of the car, the officers told her she was under arrest and handcuffed defendant. Defendant was arrested for possession of drug paraphernalia. The officers called for a female officer to search defendant. While the female officer was searching defendant, Officer Carmody searched the passenger compartment of the car. He found a knife with an 8-inch blade between the driver's seat and the floor. Carmody also seized the syringe. When he looked at it more closely, he saw what appeared to be dried blood on the syringe and residue inside it. The residue in the syringe was later determined to be methamphetamine.

While Carmody searched the car, Bakker searched defendant's coat, which she had removed before being handcuffed. In an inside coat pocket, Bakker found a baggie containing Valium tablets. The residue in the baggie tested positive for methamphetamine.

Defendant was taken to the police station. In a search incident to the arrest, defendant's purse, which Carmody had gotten from the car, was searched at the station. Inside the purse, Carmody found defendant's birth certificate, an insurance card, and other identification. He also found several small plastic baggies inside a wallet contained in the purse. Some of the baggies contained a powdery white residue, which contained methamphetamine.

Carmody interviewed defendant at the police station at about 2:30 a.m. Carmody advised defendant of her *Miranda* rights. Defendant stated that she understood them and waived them. Initially, defendant denied the wallet was hers, but later admitted that the wallet and purse were hers. She stated that the powdery substance belonged to a friend. She also admitted that the powdery substance was methamphetamine, or "crank," that she was a methamphetamine user, and that she had used methamphetamine approximately 2 weeks earlier. The interview ended at about 2:45 a.m.

Defendant's first argument is essentially that the arrest was illegal because the officers arrested defendant for possession of drug paraphernalia, an infraction as defined in Neb. Rev. Stat. § 29-431 (Reissue 1989). Defendant contends that the officers have no authority to custodially arrest for infractions, because such an arrest would be in violation of Neb. Rev. Stat. § 29-435 (Reissue 1989), which provides: "Except as provided in section 29-427, for any offense classified as an infraction, a citation shall be issued in lieu of arrest or continued custody pursuant to sections 29-422 to 29-429." Defendant's contentions are without merit.

First, at the time the officers arrested defendant, they had reasonable cause to arrest defendant for at least three misdemeanors: (1) driving without a license plate on the front of the car she was driving, in violation of Neb. Rev. Stat. § 60-323 (Reissue 1988), classified as a Class III misdemeanor by Neb. Rev. Stat. § 60-430 (Reissue 1988); (2) driving without a driver's license, in violation of Neb. Rev. Stat. § 60-413 (Reissue 1988) and also a Class III misdemeanor; and (3) operating a motor vehicle in violation of Neb. Rev. Stat. § 39-6,136(2) (Cum. Supp. 1990), in that the rear window of the

car defendant was driving was completely covered by snow, also a Class III misdemeanor.

We have held that once there has been a valid arrest, a search incident to that arrest is also valid. The officers need not state the specific crime for which a defendant is arrested in order to effectuate a valid arrest. In *State v. Roach*, 234 Neb. 620, 626, 452 N.W.2d 262, 267 (1990), we held: "Nevertheless, the validity of an arrest and the permissibility of a search incident thereto are premised upon the existence of probable cause, not the officer's knowledge that probable cause in fact does exist."

Similarly, in *United States v. Moses*, 796 F.2d 281 (9th Cir. 1986), the court held that although the arresting officer testified she did not think there was probable cause to arrest before the search, such testimony did not foreclose further examination of the probable cause issue. See, also, *Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *State v. LaChappell*, 222 Neb. 112, 382 N.W.2d 343 (1986).

In the case before us, there was probable cause to arrest defendant before the arrest or the search. In actuality, the police officer had little choice except to arrest defendant and take defendant into custody. Defendant did not have a driver's license and did not own the car she was driving. To allow defendant to proceed without a license in a car defendant apparently did not own would be the height of irresponsible conduct on the part of the arresting officers.

Once there has been a valid arrest, the search incident to that arrest is valid if conducted in the area within the arrestee's "immediate control," the area from within which the arrestee could gain possession of a weapon or destructible evidence. In *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973), an officer properly arrested the defendant for operating a vehicle without a license and then conducted a thorough search of the defendant's person, discovering heroin in his coat pocket. The Court held that the search was reasonable, stating:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest

situation that weapons or evidence would in fact be found upon the person of the suspect. . . . It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*Robinson*, 414 U.S. at 235.

Because the arrest of defendant was a valid custodial arrest, the searches of defendant's person, purse, and coat and of the car are valid. Under *Roach*, the officers do not have to specify the correct crime when they arrest, as long as probable cause exists to arrest for some crime. Probable cause for arrest existed in this case, and the searches were valid searches incident to arrest.

In addition, the officers could validly arrest defendant for possession of drug paraphernalia under these circumstances. Possession of drug paraphernalia is an infraction under Neb. Rev. Stat. § 28-441 (Reissue 1989). Again, § 29-435 states: "Except as provided in section 29-427, for any offense classified as an infraction, a citation shall be issued in lieu of arrest or continued custody pursuant to sections 29-422 to 29-429."

Neb. Rev. Stat. § 29-427 (Reissue 1989) states:

Any peace officer having grounds for making an arrest may take the accused into custody or, already having done so, detain him further when the accused fails to identify himself satisfactorily, or refuses to sign the citation, or when the officer has reasonable grounds to believe that . . . such action is necessary in order to carry out legitimate investigative functions . . . .

The officers arrested Sassen for possession of drug paraphernalia, and the following investigation was directly related to that charge. The officers observed Sassen with the syringe, as well as her visible nervousness and her "furtive gesture" of throwing the syringe on the floor when she was asked to step out of the car. They observed that she had a dealer plate over the regular license plate on the back and that she had a bank bag on the seat beside her. Additionally, they noticed

that she was holding something against the back of the bank bag that she did not want them to see. The situation required more investigation, and the officers arrested Sassen in order to carry out the investigation. In this situation, an arrest for an infraction is permissible.

We hold that the officers had the authority to arrest defendant for the infraction of possession of drug paraphernalia. Although the offense is only an infraction, for which officers are instructed to give only citations, this situation came within one of the exceptions listed in § 29-427.

Appellant then argues that even if the officers have the authority to arrest for infractions under certain circumstances, the officers in this case had no probable cause to believe that defendant had committed the infraction of possession of drug paraphernalia. This contention is without merit.

The appellant argues that Neb. Rev. Stat. § 28-440 (Reissue 1989) contains the factors to use in determining if probable cause exists to find that an object is drug paraphernalia. That is not what § 28-440 is. The statute states: "In determining *whether an object is drug paraphernalia, a court or other authority shall consider, in addition to all other logically relevant factors*, the following . . . ." (Emphasis supplied.) The factors listed in § 28-440 are used to determine if the objects were actually drug paraphernalia, not whether the officers had probable cause to believe they were drug paraphernalia. Some of the factors on the list, such as the existence of residue of a controlled substance on the object and expert testimony concerning the object's use, are not factors that could be considered by police officers in determining whether they have probable cause because those factors could not be available to the officers until either after a lab test or during the trial.

In addition, the statute includes the language "in addition to all other logically relevant factors." The list in § 28-440 is illustrative, not exclusive. Defendant's behavior, as well as all the circumstances surrounding the stop and arrest, also provided the officers with probable cause to believe the syringe was drug paraphernalia. She was driving a car with the regular license plate covered with a dealer plate, she had no license, nor could she show ownership of the car. She was carrying a bank

bag on the seat beside her, and when asked what was in it, she held it so one of the officers could not see in it. While going through it, she held something back against the back of the bag. When she picked up the syringe, she looked nervous and confused, and when asked to step out of the car, she threw the syringe on the floor. The officers had probable cause to believe the syringe was drug paraphernalia.

Because we hold that defendant's arrest was legal, we need not consider her argument that the statements she made to the police after her arrest were the product of an unlawful arrest. Appellant's assignments of error are without merit.

AFFIRMED.