STATE OF NEBRASKA, APPELLEE,
v. DEREK J. SCOVILL, APPELLANT.
608 N.W. 2d 623

Filed April 4, 2000. No. A-99-154.

Randall Wertz, Deputy Thayer County Public Defender, for appellant.

Don Stenberg, Attorney General, and Marie Colleen Clarke for appellee.

HANNON, SIEVERS, and INBODY, Judges.

HANNON, Judge.

## I. INTRODUCTION

Defendant, Derek J. Scovill, appeals his convictions for possession of methamphetamine, alprazolam, and marijuana on the basis that the evidence admitted against him was the fruit of an illegal search of the glove box of his car conducted after the car had been involved in a one-vehicle accident. Scovill specifically alleges, restated, that the trial court erred in (1) not making the necessary findings required by law and (2) admitting the evidence discovered in searches of his car, containers strewn about the accident scene, and his person. We reverse his convictions because the searches of the glove box, containers, and his person were unconstitutional and therefore the evidence obtained therefrom should have been excluded by the trial court.

## II. PROCEDURAL BACKGROUND

The State of Nebraska charged Scovill by information with four counts of drug-related offenses: (1) possession of methamphetamine, pursuant to Neb. Rev. Stat. § 28-416(3) (Reissue 1995); (2) possession of alprazolam, also pursuant to § 28-416(3); (3) possession of marijuana, pursuant to § 28-416(11); and (4) possession of drug paraphernalia, pursuant to Neb. Rev. Stat. § 28-441 (Reissue 1995). Scovill made a motion to suppress to exclude the drugs and paraphernalia as fruit of an illegal search in violation of his rights under the U.S.

Const. amend. IV and Neb. Const. art. I, § 7. The district court for Thayer County overruled Scovill's motion to suppress as well as Scovill's renewed objection to the evidence at the bench trial. At the close of the evidence, the trial court dismissed the drug paraphernalia charge but found Scovill guilty on the remaining three charges. Scovill was sentenced to probation and ordered to pay court costs; he now appeals his convictions.

## III. SUMMARY OF EVIDENCE

Nebraska State Patrol Trooper Kyle Johansen was dispatched to the scene of a one-car accident, occurring earlier in the day near Byron, Nebraska, in rural Thayer County, after a passerby reported seeing a weapon in the car. Johansen had visited the accident scene earlier in the day and had a brief conversation with Thayer County Deputy Sheriff Gordon Downing about the accident. At that time, Johansen observed an individual in the back of Downing's car whom Downing identified as the driver of the car in the accident and whom Johansen later learned was Scovill. Johansen talked to Downing a second time about the accident while at the sheriff's station later that same day, but before Johansen was dispatched to the scene on the weapons call.

When Johansen responded to the dispatch, he looked inside and immediately observed a handgun on the front passenger seat. At the time he responded to the call, no one else was present at the accident scene. Johansen testified that he did not remember whether he reached through a broken window to pick up the gun but that he did eventually open the passenger door of the car. Upon closer examination of the gun, Johansen realized it was a BB gun. After making this determination, Johansen continued searching for other weapons and for the registration of the vehicle. He testified that while he had seen the person identified as the driver, he was curious as to who owned the car. Johansen opened the glove box and found the car's registration, which listed Scovill as the owner. He also found a piece of broken mirror and small medical forceps which were burnt on the ends, which Johansen believed were drug paraphernalia.

Johansen then searched the remainder of the car for contraband before turning the focus of his search to the items strewn

about the accident scene. Johansen first found a Crown Royal whiskey bag about 30 feet in front of the vehicle, which he picked up and, upon feeling a small box inside, opened the bag and removed the box. He then opened the box and found a small, grain scale. Johansen also found a closed six-pack cooler, which he opened. Inside the cooler was a cardboard tube, which Johansen also opened and found short plastic straws which he believed were used for inhaling illegal drugs. Finally, Johansen found a bong, a pipe used for smoking marijuana, in a corn row in the harvested cornfield adjacent to the ditch which was "a considerable distance" from the other items that were strewn about.

Johansen collected the paraphernalia and other items strewn about the scene and placed the paraphernalia in his patrol car and the rest of the items in the trunk of Scovill's car. He then called Downing back to the scene to discuss what he had found. Downing informed Johansen that he could probably find Scovill at a truckstop in Hebron, Nebraska. While Downing remained at the scene, Johansen went to the truckstop and found Scovill leaning against an outside wall of the building. Johansen testified that he, while in uniform, approached Scovill and asked if he was Scovill. After Scovill nodded that he was, he informed Johansen that he was the only occupant in the car at the time of the accident and that the items in the car belonged to him.

Johansen then explained to Scovill that he had found drug paraphernalia at the scene and then asked whether Scovill had any weapons or contraband on his person. Scovill stated that he did not have any weapons. Johansen patted Scovill down nonetheless. Specifically, Johansen testified that he conducted the pat-down search because, based on what Johansen had found at the scene, he believed Scovill "still could have had drugs on him or possibly a weapon." On cross-examination, Johansen admitted he conducted the pat down "basically to search him to see if [he] could find anything else." Johansen also testified that he did not have any reason to believe Scovill was armed and dangerous other than the fact that Johansen did not know him, a possibility that exists with virtually anyone. Johansen was also curious because Scovill only answered that he did not have any weapons and said nothing about whether he had any contraband.

Johansen testified that he thought he could not have arrested Scovill at that point because he had only found drug paraphernalia which he knew to be an infraction which would justify only the delivery of a citation in lieu of arrest.

Johansen started with the right front pocket of Scovill's ski jacket and, without manipulation, felt what he believed to be a pipe used for smoking marijuana. He then asked Scovill to remove the item from his pocket, which he did, and Johansen found that it was a marijuana pipe which still had residue inside. Johansen next patted the right front change pocket of Scovill's jeans and felt a small bulge. Johansen manipulated the bulge a little to see if it was soft and then removed it from the pocket. Johansen discovered that the item was a wad of plastic wrap containing some marijuana. There was also a cellophane wrapper containing part of a pill later determined to be alprazolam.

As Johansen continued his pat-down search on the right side of Scovill's coat, he felt a pocket with a small rectangular box inside. Johansen asked Scovill what the box contained, to which Scovill replied, "[S]ome meth." Johansen then removed the box, opened it, and found a razor and a small baggie containing a yellowish white powder, which Johansen believed to be methamphetamine. Johansen testified that he did not arrest Scovill until he completed searching him and that then he placed Scovill under arrest for possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia.

### IV. ASSIGNMENTS OF ERROR

Scovill alleges, restated, that the trial court erred in (1) failing to make sufficient findings of fact or law regarding the warrantless search of Scovill's automobile and (2) overruling Scovill's motion to suppress and holding that the detention and search were justified.

### V. STANDARD OF REVIEW

 The Nebraska Supreme Court articulated the applicable standard of review for this case in *In re Interest of Andre W.*, 256 Neb. 362, 365, 590 N.W.2d 827, 830 (1999):

> A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investi-

gatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. [Citation omitted.]

A trial court's ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo. However, findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge.

## VI. ANALYSIS

### 1. FIRST ASSIGNMENT OF ERROR

Scovill's first assignment of error alleges that the trial court failed to make the necessary findings mandated by *State v. Osborn*, 250 Neb. 57, 547 N.W.2d 139 (1996). With respect to granting or denying a motion to suppress, *Osborn* held:

Such findings of fact may be indispensable to a proper appellate review. [Citations omitted.] Without guidance, we might not know whether the trial court rejected a defendant's factual contentions or had acted on some legal basis. Under our standard of review, we would not know the basis of the trial court's judgment. A different standard of review applies to each. Henceforth, district courts shall articulate in writing or from the bench their general findings when denying or granting a motion to suppress. The degree of specificity required will vary, of course, from case to case.

250 Neb. at 66-67, 547 N.W.2d at 145. Here, the trial court entered several paragraphs in its trial docket regarding the admission of the evidence against Scovill. While the trial court did not discuss what Scovill apparently believes it should have discussed, the trial docket, albeit difficult to follow, attempts to explain the trial court's reasoning in admitting the evidence against Scovill.

*Osborn* explained that the necessary findings would vary according to the applicable standard of review and the facts and

circumstances of each case. In this case, the issues appealed center on whether Johansen had reasonable suspicion or probable cause to conduct the searches of the glove box, containers, accident scene, and Scovill's person. The trial court's factual findings in this case are of relatively no moment because the applicable standard requires us to review reasonable suspicion and probable cause de novo. Also, Scovill does not dispute any facts in evidence, only whether Johansen's searches were lawful. Accordingly, we find this assignment without merit.

## 2. SECOND ASSIGNMENT OF ERROR

### (a) Glove Box

Scovill argues that Johansen illegally searched the glove box of the car and that therefore all of the evidence discovered thereafter is tainted as fruit of the poisonous tree. Both the U.S. Constitution and the Nebraska Constitution protect people against unreasonable searches and seizures. See, *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961); *State v. Neely*, 236 Neb. 527, 462 N.W.2d 105 (1990). Johansen's actions in this case clearly merit analysis under this body of law. Johansen searched Scovill's car, his belongings, and his person and seized several items found during these searches. He also seized Scovill himself when he conducted the pat-down search.

In *State v. Craven*, 253 Neb. 601, 606, 571 N.W.2d 612, 617 (1997), the Nebraska Supreme Court stated:

> While searches and seizures conducted pursuant to a warrant supported by probable cause are generally considered to be reasonable, warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few " ' "specifically established and well-delineated exceptions" ' " which must be " ' "jealously and carefully drawn". . .' " and applied only where there is a showing that " ' "the exigencies of the situation made that course imperative." ' "

(Citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), and *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996)). The law is equally clear that "[i]n the case of a search and seizure conducted without a warrant, the State has the burden of showing the applicability of one or more

of the exceptions to the warrant requirement." *Craven*, 253 Neb. at 606, 571 N.W.2d at 617.

We turn first to the search Johansen conducted at the scene of the accident. With respect to the search of a vehicle, the Nebraska Supreme Court has opined:

> Less rigorous requirements govern searches of automobiles, not only because of the element of mobility, but because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. [Citation omitted.] One has a lesser expectation of privacy in a motor vehicle because its function is for transportation purposes and it seldom serves as one's residence or as the repository of personal effects. [Citations omitted.] As such, the recognized exceptions to the Fourth Amendment's warrant requirement as applied to automobiles include probable cause, exigent circumstances, consent, search incident to arrest, inventory search, and plain view.

*State v. Konfrst*, 251 Neb. 214, 223-24, 556 N.W.2d 250, 258-59 (1996). Accordingly, because Johansen conducted his search of Scovill's car without a warrant, the State must show that the search falls within one of the listed exceptions to the warrant requirement in order for the evidence to be admissible.

### (i) Inventory Search

With respect to Johansen's search of the glove box, the State solely argues that Johansen performed a public caretaking function as part of an inventory search. We agree with the apparent choice by the State not to argue any of the other exceptions for vehicles, as we believe the evidence in the record fails to provide sufficient support for the other exceptions. Inventory searches, which are excepted from the warrant requirement under the U.S. Constitution and the Nebraska Constitution, are judged by a standard of reasonableness. See *State v. Filkin*, 242 Neb. 276, 494 N.W.2d 544 (1993). "However, such searches must be performed in accordance with standard operating procedures." *Id.* at 279, 494 N.W.2d at 547. See, also, *Newman, supra* (reiterating that State must prove inventory search was conducted pursuant to standard operating procedures to be constitutional under both federal and state Constitutions).

The progeny of U.S. Supreme Court cases regarding inventory searches has consistently required showing some standardized procedure or established routine. In *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976), the Court found an inventory search performed in accord with strict police department guidelines constitutional. In *Illinois v. Lafayette*, 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983), the Court held that an inventory search of an arrested person's backpack was reasonable because the arrest was lawful and the search was part of the routine procedure for booking an arrested person.

Similarly, in *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987), the Court concluded that reasonable police regulations relating to inventory searches conducted in good faith satisfy the Fourth Amendment. Finally, in *Florida v. Wells*, 495 U.S. 1, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990), the Court explained that requiring some standardized criteria or established routine to regulate inventory searches prevents such searches from becoming a pretext for general rummaging to find incriminating evidence.

Johansen did not testify regarding any procedures or routines, and the State provided no other evidence of the same. Because the State carried the burden of proving the applicability of the exception to the warrant requirement, its failure to make this necessary showing results in our finding that the inventory search exception does not apply in this case. See *Filkin, supra* (explaining that law enforcement departments are not required to have inventory search policies in writing; however, State must prove that search was made pursuant to standardized procedures or established routine, or court must find such search unconstitutional). Further, the record does not reflect that Johansen searched the car and collected the items strewn about in order to secure and protect them as discussed in *Opperman, supra*, as the justification for an inventory search.

### (ii) Community Caretaking

The State also argues that Johansen was performing a community caretaking function, which excepts his actions from the warrant requirement under federal and state law. Nebraska has only addressed the community caretaking function once, in *State*

*v. Smith*, 4 Neb. App. 219, 540 N.W.2d 374 (1995). See, also, *State v. Bartholomew*, 258 Neb. 174, 602 N.W.2d 510 (1999) (declining to consider community caretaking exception as State requested because circumstances of case did not give rise to need to address issue). In *Smith*, we recognized that "under appropriate circumstances a law enforcement officer may be fully justified in stopping or contacting a vehicle to provide assistance, without needing any reasonable basis to suspect criminal activity." 4 Neb. App. at 225, 540 N.W.2d at 379. We cited *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973), which explained that times occur in which local police officers investigate accidents, not under a claim of criminal liability, but under a community caretaking function divorced from the detection, investigation, or acquisition of evidence of a crime. Accordingly, we held that the officer in *Smith* constitutionally detained a vehicle for a brief period of time to determine the condition of the driver when the officer believed exigent circumstances might have existed.

We note briefly that *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996), which came after our decision in *Smith*, did not list community caretaking as an exception to the warrant requirement with respect to vehicles. *Konfrst* stated that the recognized exceptions to the warrant requirement "included" the ones listed. *Konfrst* gave no indication that the list provided was exhaustive. Further, *Konfrst* cited only generally to 68 Am. Jur. 2d *Searches and Seizures* §§ 61 and 62 (1993) for the list of exceptions provided. This situation, coupled with the close parallel between federal and Nebraska search and seizure laws, leads us to believe the Nebraska Supreme Court did not intentionally omit the community caretaking exception for the purpose of barring the use of the exception in appropriate cases.

In this case, no evidence suggests the presence of any exigent circumstances. In fact, Johansen testified that he opened the glove box because he was curious as to who owned the car. This reason is not sufficient to constitute a community caretaking function. The record presents no evidence that Johansen's duties while at the scene of the accident required him to open and search the glove box. If such a need existed, the State carried the burden to prove it, and in the absence of such a showing, we find that the community caretaking function does not apply.

### (b) Accident Scene

Scovill also argues that the evidence Johansen found in the containers strewn about the accident scene was fruit of the illegal search of the glove box and therefore was inadmissible. The State asserts that Johansen acted reasonably in taking an inventory of the items ejected from the car and that Scovill cannot have a reasonable expectation of privacy in the items left in the ditch. In support of its argument, the State cites *State v. Cronin*, 2 Neb. App. 368, 509 N.W.2d 673 (1993), where we held that cocaine discarded by a defendant while pursued on foot by the police constituted abandoned property for search and seizure purposes. In the instant case, the State asserts that even without the search of the glove box, these items remain admissible because no expectation of privacy could attach at the time Scovill left them lying in the ditch as he left with Downing.

In *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), the U.S. Supreme Court specifically addressed the issue of searching containers located in automobiles, the automobile exception. The Court held that if the police have probable cause to search a vehicle, the police may search every part of the vehicle and any container, relevant to the item sought, found therein pursuant to the automobile exception. See, also, *State v. Hansen*, 221 Neb. 103, 375 N.W.2d 605 (1985) (stating that Nebraska has adopted the *Ross* rule), *abrogated on other grounds, Horton v. California*, 496 U.S. 128, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990).

The Nebraska Supreme Court defines probable cause as " ' "a fair probability that contraband or evidence of a crime will be found." ' " . . . Probable cause is determined by a standard of objective reasonableness, i.e., whether the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of [a] crime will be found.

*State v. Craven*, 253 Neb. 601, 610, 571 N.W.2d 612, 619 (1997). After assessing that the weapon was a legal BB gun, Johansen did not have probable cause to search Scovill's car or the containers according to the evidence in the record. Further, Johansen testified that he searched the glove box because he was curious as to who owned the car; he did not testify that he

observed any facts or circumstances which reasonably indicated that contraband or evidence of a crime would be found. Johansen's curiosity does not dispense with the requirement of probable cause. Without probable cause to search the car, Johansen's search of the containers was illegal.

As for the State's argument that Scovill had no expectation of privacy in containers he left strewn about the accident scene, we find that the State misapplies *Cronin, supra.* In that case, we addressed the admissibility of drugs discarded by the defendant while being pursued by police officers. We held that because the defendant discarded the property before the police had applied physical force to restrain him, the drugs were abandoned property which could be lawfully recovered by the officers. In this case, Scovill did not intentionally throw the containers in the ditch while evading police; rather, the containers were strewn about as a result of the accident. The record contains no evidence that Scovill left the containers in the ditch with the intent of abandoning them.

Based on the record, we conclude that a driver of a vehicle does not lose his or her expectation of privacy in containers which had been in a vehicle but which were strewn about near the vehicle as a result of an accident. The containers were inadvertently thrown into the ditch by the accident, and we believe this is insufficient to strip Scovill's expectation of privacy in them, which the law otherwise accepts as reasonable. According to the authority discussed above, containers in vehicles require probable cause for the container or for the vehicle generally in order to be searched. We believe these containers required no less. Further, if Johansen believed he needed to search the containers, he could have secured them and obtained a warrant first.

With respect to the bong, we believe Johansen acted lawfully under the plain view doctrine. "Objects falling within the plain view of an officer, who has the right to be in the position to have such view, does not constitute a search." *State v. Merrill,* 252 Neb. 510, 516, 563 N.W.2d 340, 344 (1997). Johansen found the bong lying on the ground while he walked around the accident scene. Johansen acted lawfully in walking around the accident and is therefore not prohibited from seizing recognized contraband. The bong alone may have justified Johansen in continuing an investigation and perhaps given him reasonable suspicion to

conduct a *Terry* stop of Scovill at the truckstop, but, alone, it does not justify a full search. See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Probable cause was needed, and the bong alone in these circumstances could not provide it. See, e.g., *State v. Brownlie*, 149 Or. App. 58, 941 P.2d 1069 (1997) (holding that marijuana pipe alone seen in purse with use of x ray machine at courthouse did not give rise to probable cause to search or arrest).

We note however that all of the evidence that Johansen was aware of at this point was drug paraphernalia, an infraction.

### (c) Scovill's Person

We now turn to Johansen's search of Scovill's person at the truckstop.

> " ' "[P]olice can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the fourth amendment.' " . . . " 'Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause." . . .' "

*State v. Soukharith*, 253 Neb. 310, 321, 570 N.W.2d 344, 354 (1997). Under this standard, Johansen was justified in speaking to Scovill in light of the bong found at the accident scene and the fact that Scovill stated, early in the conversation with Johansen, that the items at the scene belonged to him.

The next question then is whether the evidence Johansen found when searching Scovill is admissible. For the evidence to be admissible, Johansen must have had sufficient foundation for conducting the pat down and have conducted the search within its proper scope.

> The standard has long been that an officer who reasonably believes that a person is armed and dangerous is entitled for the protection of himself or herself and others to conduct a carefully limited search of the outer clothing of such person in order to discover weapons which may be used to assault him or her.

*In re Interest of Andre W.*, 256 Neb. 362, 367, 590 N.W.2d 827, 831 (1999). We do not need to address whether Johansen had reasonable suspicion that Scovill was armed and dangerous, because we find that even if he had such a belief, Johansen exceeded the limited scope of the search.

In *State v. Kimminau*, 240 Neb. 176, 181, 481 N.W.2d 183, 187 (1992), the Nebraska Supreme Court explained that a pat-down search must be " 'carefully limited' " to a search for weapons and that a search conducted to look for both firearms and controlled substances exceeds the scope of a *Terry* search. The court found that the evidence in that case was however admissible because the officers also had probable cause to arrest the defendant at the time of the search. Johansen testified that he patted Scovill down because he believed Scovill could still have drugs on him or possibly a weapon, and he admitted that he thought he did not have grounds to arrest Scovill prior to the search of his person, but only to give him a citation in lieu of arrest. As articulated in *Kimminau*, a search for this combination of reasons goes beyond the permissible scope of a *Terry* search.

"Evidence obtained as the fruit of an unconstitutional search and seizure is inadmissible in a state prosecution." *State v. Hicks*, 241 Neb. 357, 367, 488 N.W.2d 359, 365 (1992) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)). Accordingly, the evidence obtained from Johansen's search of the glove box, the bag, the cooler, and Scovill's person is inadmissible as fruit of illegal searches. Only the bong was lawfully discovered and therefore admissible against Scovill in this case.

Finally, we address *State v. Sassen*, 240 Neb. 773, 484 N.W.2d 469 (1992), which both parties and the trial court cited in support of their positions on Johansen's search. In *Sassen*, police officers who noticed that a car did not have a front license plate and was being driven with its back window completely covered in snow stopped the car and spoke with the driver. The driver admitted that she was driving without a driver's license, and during the course of later conversation, the officers observed that the driver had drug paraphernalia. The officers then arrested the driver; searched the car, her purse, and her person; and found methamphetamine.

The Nebraska Supreme Court affirmed the driver's conviction for possession of a controlled substance and found the driver's argument that the officers did not have probable cause to arrest her without merit. The driver argued that Neb. Rev. Stat. § 29-435 (Reissue 1995) requires officers to issue a citation in lieu of an arrest when faced with an infraction such as possession of drug paraphernalia. *Sassen* noted that the driver's argument was faulty because at the time of the arrest, the officers had three separate misdemeanors supporting the arrest—the missing license plate, driving without a license, and snow covering the rear window.

In additional comments, *Sassen* noted that § 29-435 makes an exception for situations falling under Neb. Rev. Stat. § 29-427 (Reissue 1995), which states:

> Any peace officer having grounds for making an arrest may take the accused into custody or, already having done so, detain him further when the accused fails to identify himself satisfactorily, or refuses to sign the citation, or when the officer has reasonable grounds to believe that (1) the accused will refuse to respond to the citation, (2) such custody is necessary to protect the accused or others when his continued liberty would constitute a risk of immediate harm, (3) such action is necessary in order to carry out legitimate investigative functions, (4) the accused has no ties to the jurisdiction reasonably sufficient to assure his appearance, or (5) the accused has previously failed to appear in response to a citation.

According to *Sassen*, the investigation following the driver's arrest was directly related to the charge of drug possession, and all the circumstances taken together required further investigation. *Sassen* held that the search was permitted under § 29-427.

While this case also involves an initial finding of drug paraphernalia, we believe that *Sassen* is distinguishable from this case in several legally significant ways. First, the officers in *Sassen* had three independent causes to arrest the driver, but in this case, Johansen had no such other reasons to support his actions. Further, any arrest of Scovill would not have justified searching his car incident to that arrest, like the search in

*Sassen,* because "the search incident to that arrest is valid if conducted in the area within the arrestee's " 'immediate control,' " the area from within which the arrestee could gain possession of a weapon or destructible evidence." *Sassen,* 240 Neb. at 777, 484 N.W.2d at 472. Here, Scovill was miles from his car when Johansen approached him.

With respect to the additional comments in *Sassen,* we note that in this case, Johansen testified that he knew he did not have grounds to arrest Scovill and that he did not arrest Scovill in order to carry out any further investigative functions. Rather, Johansen investigated first, then arrested based on what he had found. This sequence directly contradicts § 29-427, which begins by stating that an officer having grounds for an arrest or having done so already may continue to satisfy an investigative need. With these important distinctions in mind, *Sassen* does not apply in this particular case.

## VII. CONCLUSION

For the foregoing reasons, we reverse Scovill's convictions because the searches conducted by Johansen of the glove box, the two containers, and Scovill's person were unconstitutional under both the U.S. Constitution and the Nebraska Constitution, and therefore, we remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.