STATE OF NEBRASKA, APPELLEE, V.
JOHN P. PETERSEN, APPELLANT.
676 N.W.2d 65

Filed March 16, 2004.    No. A-03-268.

W. Randall Paragas and Sarah M. Mooney, of Paragas Law Offices, for appellant.

Jon Bruning, Attorney General, and David Arterburn for appellee.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

John P. Petersen appeals his conviction in the Lancaster County District Court for manufacture of a controlled substance (methamphetamine), a Class III felony. The evidence supporting the conviction was found in a vehicle after a traffic stop. At issue is the legality of a pat-down search of the driver, Petersen, which produced a baggie of marijuana, which discovery led to a search of the vehicle, wherein materials for the manufacture of methamphetamine were found.

## FACTUAL BACKGROUND

On April 2, 2001, at approximately 1:47 a.m., Lincoln police officer Justin Darling was patrolling the area of 48th Street between Old Cheney Road and Nebraska Highway 2 in response to a recent string of larcenies in the area. He observed a white pickup with the name "Adams Concrete" on its side headed south on 48th Street, coming from Highway 2. That pickup had been identified by a confidential informant as possibly related to the larcenies. When Officer Darling saw the pickup, he turned around and headed in the same direction as the pickup.

The driver of the pickup immediately made a right turn onto Briarpark Drive, but failed to signal the turn. Officer Darling sped up so that he could stop the pickup for the traffic infraction of failure to signal, and the pickup appeared to speed up while Officer Darling was behind it. The pickup pulled into the Amberwood Apartments parking lot. Officer Darling then turned on his cruiser's overhead lights and pulled into the lot. As Officer Darling approached the stopped pickup, only Petersen was in the pickup, and the pickup's passenger door was wide open. The passenger shortly returned and sat down in the passenger seat. Upon

making contact with Petersen, Officer Darling noticed that Petersen's eyes were bloodshot and watery and that his speech was slurred. When asked by Officer Darling whether he had been drinking, Petersen responded that he had had one beer. Petersen voluntarily took a preliminary breath test which produced a result of 0.002 grams of alcohol per 210 liters of breath. Officer Darling found the low result surprising in light of Petersen's bloodshot, watery eyes and slurred speech.

A second officer, Eric Runge, arrived on the scene pursuant to Officer Darling's earlier call for backup. Officer Runge arrived about the time Officer Darling was finishing the breath test and still speaking with Petersen. While Officer Darling was still with Petersen, Officer Runge spoke with John Eads, the passenger in the pickup. While speaking with Eads, Officer Runge suspected that Eads was not telling the truth about where he and Petersen had been that night and what they had been doing. Officer Runge consequently placed Eads in the back seat of his cruiser. Officer Runge returned to the passenger side of the pickup, and from the outside of the pickup, he saw a marijuana pipe in plain view in the center-console ashtray of the pickup.

Officer Darling testified that Petersen was free to go after the breath test, but that upon the discovery of the pipe, Petersen was detained again while Officer Runge sought to determine to whom the pipe belonged. Initially, neither Petersen nor Eads claimed ownership of the pipe, but Petersen did shortly thereafter admit that it was his. Petersen told the officers that there was no more marijuana in the pickup or on him, as Eads and he had smoked it all. Officer Darling asked Petersen for permission to search the pickup, which Petersen refused.

After permission to search the pickup was declined, Officer Darling patted Petersen down. Officer Darling testified that this was done because "there's narcotics that he's claimed to be his. There's no marijuana located with the pipe, he possibly has narcotics on him." Officer Darling testified that he did the pat down incident to his arrest of Petersen, finding in Petersen's left front jeans pocket a baggie of what, due to his experience and training, he concluded was marijuana. On cross-examination, Officer Darling first testified that he placed Petersen under arrest after Petersen had admitted the pipe was his and then did a pat-down

search incident to such arrest. But, after reviewing his report on the witness stand during cross-examination, he testified that his police report, made the night of the incident, indicated that he patted Petersen down for weapons, found the baggie of marijuana, placed him under arrest, and then searched the pickup incident to the arrest.

A third officer arrived on the scene, and the three officers searched the pickup. During the search of the pickup, several items associated with the manufacture of methamphetamine were found. The items included empty pill sheets from pills containing pseudoephedrine; a plastic bag containing pseudoephedrine boxes, some full of pills and others containing more empty pill sheets; a box of Mason jars; and a bottle of propane and a propane camp stove—all materials used to cook methamphetamine.

Suspecting that the pickup was a "meth lab," the officers exited the pickup and called for a sergeant and then a clandestine laboratory team that specializes in dismantling methamphetamine laboratories. A clandestine laboratory team arrived and began its investigation. Other facts in the record are omitted as unnecessary to our determination of the issue presented by this appeal.

## PROCEDURAL BACKGROUND

Petersen was charged by information in the district court for Lancaster County with one count of manufacturing a controlled substance, methamphetamine. On May 13, 2002, Petersen filed a motion to suppress evidence. On September 26, a hearing on the motion to suppress was held. The motion to suppress was overruled on October 10. On December 11, a stipulated bench trial was held in the district court. On January 15, 2003, Petersen was adjudged guilty of manufacturing a controlled substance, methamphetamine. On February 26, Petersen was sentenced to 3 years' probation, plus a special condition of probation that he serve a 6-month term of imprisonment in the Lancaster County jail. Petersen now appeals the denial of his motion to suppress evidence.

## ASSIGNMENTS OF ERROR

Petersen alleges that the district court erred in (1) ruling that the pipe which the officers saw in plain view constituted probable cause to search the pickup he was driving, pursuant to the automobile exception to the warrant requirement; (2) finding that

the search of his person was constitutional as a search incident to a lawful arrest; and (3) ruling that the search of the pickup was constitutional.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Manning*, 263 Neb. 61, 638 N.W.2d 231 (2002).

When reviewing a district court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search, ultimate determinations of reasonable suspicion and probable cause are reviewed de novo and findings of fact are reviewed for clear error, giving due weight to inferences drawn from those facts by the trial judge. *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000).

When reviewing a trial court's ruling on a motion to suppress evidence, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002); *State v. Manning, supra.*

## ANALYSIS

This is a warrantless search and seizure case. Thus, we begin our analysis by quoting at some length from *State v. Roberts*, 261 Neb. 403, 409-10, 623 N.W.2d 298, 304-05 (2001), wherein the Nebraska Supreme Court set forth the basic law applicable to a warrantless search and seizure case:

> Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few " ' " 'specifically established and well-delineated exceptions,' " ' " *State v. Craven*, 253 Neb. 601, 606, 571 N.W.2d 612, 617 (1997), which "must be strictly confined by the exigencies which justify [their] initiation," *State v. Ortiz*, 257 Neb. [784,] 815, 600 N.W.2d [805,] 828 [(1999)]. "In the case of a search and seizure conducted without a warrant, the State has the burden of showing the applicability

of one or more of the exceptions to the warrant require-
ment." *State v. Craven*, 253 Neb. [601,] 606, 571 N.W.2d
[612,] 617 [(1997)].

Petersen contends that the pipe in plain view does not legally
justify the search of the pickup, nor can the pickup's search be
justified by the pat down during which the marijuana was dis-
covered, as such was not a legal search. Petersen relies heavily
on this court's decision in *State v. Scovill*, 9 Neb. App. 118, 608
N.W.2d 623 (2000), wherein we found that possession of drug
paraphernalia—a bong discovered by police at the scene of a
vehicle accident—did not justify a pat-down search of the driver,
which search produced methamphetamine, after officers found
him at a truckstop several miles from the accident scene. The
State argues that the "surrounding circumstances," in addition to
the discovery of the marijuana pipe, brief for appellee at 8, jus-
tify the officers' further investigation under Neb. Rev. Stat.
§ 29-427 (Reissue 1995), claiming that such investigation is
clearly authorized in *State v. Sassen*, 240 Neb. 773, 484 N.W.2d
469 (1992). We conclude that *Sassen* does sustain the pat down
of Petersen and the search of the pickup because even though
possession of a marijuana pipe is only an infraction, see Neb.
Rev. Stat. § 28-441 (Reissue 1995), for which citations are to be
issued in lieu of arrest, see Neb. Rev. Stat. § 29-435 (Reissue
1995), *Sassen* creates the controlling exception.

In *Sassen*, police officers stopped a car and spoke with the
driver when they noticed that the car did not have a front
license plate and was being driven with its rear window com-
pletely covered in snow. The driver admitted that she was driv-
ing without a driver's license, and during the course of the con-
tact, the officers observed that the driver had what they thought
was drug paraphernalia, a syringe. The officers then arrested
the driver; searched the car, her purse, and her person; and
found methamphetamine.

The Nebraska Supreme Court affirmed the *Sassen*
driver's conviction for possession of a controlled substance,
rejecting her argument that the officers had not had probable
cause to arrest her. The driver argued that § 29-435 requires offi-
cers to issue a citation in lieu of an arrest when faced with an
infraction such as possession of drug paraphernalia and that as a

result, she could not be searched incident to an arrest. The court in *Sassen* noted that the driver's argument was faulty because at the time of the arrest, the officers had been aware of three separate misdemeanors supporting the driver's arrest—the missing license plate, her driving without a license, and her driving with snow covering the rear window. Thus, the searches were upheld as incident to a valid custodial arrest. The *Sassen* court then, although perhaps in dicta, made it entirely clear that the possession of paraphernalia alone would have justified an arrest and searches, and we quote:

> In addition, the officers could validly arrest [the driver] for possession of drug paraphernalia under these circumstances. Possession of drug paraphernalia is an infraction under Neb. Rev. Stat. § 28-441 (Reissue 1989). Again, § 29-435 states: "Except as provided in section 29-427, for any offense classified as an infraction, a citation shall be issued in lieu of arrest or continued custody pursuant to sections 29-422 to 29-429."
>
> [Section] 29-427 . . . states: "Any peace officer having grounds for making an arrest may take the accused into custody or, already having done so, detain him further when the accused fails to identify himself satisfactorily, or refuses to sign the citation, or when the officer has reasonable grounds to believe that . . . such action is necessary in order to carry out legitimate investigative functions . . . ."
>
> The officers arrested [the driver] for possession of drug paraphernalia, and the following investigation was directly related to that charge. The officers observed [the driver] with the syringe, as well as her visible nervousness and her "furtive gesture" of throwing the syringe on the floor when she was asked to step out of the car. They observed that she had a dealer plate over the regular license plate on the back and that she had a bank bag on the seat beside her. Additionally, they noticed that she was holding something against the back of the bank bag that she did not want them to see. The situation required more investigation, and the officers arrested [the driver] in order to carry out the investigation. In this situation, an arrest for an infraction is permissible.

We hold that the officers had the authority to arrest [the driver] for the infraction of possession of drug paraphernalia. Although the offense is only an infraction, for which officers are instructed to give only citations, this situation came within one of the exceptions listed in § 29-427.

*State v. Sassen*, 240 Neb. 773, 778-79, 484 N.W.2d 469, 472-73 (1992). Thus, under *Sassen*, we hold that an arrest for an infraction normally handled by a citation is warranted when the surrounding circumstances give rise to reasonable suspicion of criminal behavior beyond the infraction.

From *Sassen*, we conclude that what is most significant to our analysis is that paraphernalia was found, admitted by Petersen to be his, and the surrounding circumstances. As in *Sassen*, there was a "furtive" gesture, in that once the police cruiser turned around in pursuit of the pickup, about which the police department had received a tip linking it to thefts in the area, the pickup turned off of its path onto a side street and appeared to speed up. When Officer Darling got to where the pickup eventually stopped, Eads, the passenger, had fled and disappeared, only to return shortly thereafter—raising the natural question of "What had he gotten rid of?" Additionally, Petersen, the driver, appeared intoxicated but strangely passed an alcohol breath test, which facts were plausibly explained by the subsequent discovery of a marijuana pipe and the story that the two men had smoked all of their marijuana. As in *Sassen*, these surrounding circumstances—suggesting criminal behavior beyond riding around with a marijuana pipe—cry out for further investigation as to exactly what these two men were up to in the early morning hours of April 2, 2001. Thus, under the exception from *Sassen*, the officers were authorized under § 29-427 to detain and investigate further, including to search Petersen's person via the pat down and to inspect the interior of the pickup, even though both the failure to signal the turn and the possession of the pipe were only infractions.

Because we find that the *Sassen* exception to the need for a predicate arrestable offense is so directly applicable here, given the presence of surrounding circumstances suggesting a need for further investigation beyond dealing with the infractions, we do not attempt to distinguish our opinion in *State v. Scovill*, 9 Neb. App. 118, 608 N.W.2d 623 (2000), from the case at hand. We do,

however, acknowledge that *Scovill* may not sufficiently emphasize the creation by *Sassen* of an exception to the need for a predicate arrest before an investigatory detention when officers have found a citizen involved in merely an infraction. But, we emphasize the need for surrounding circumstances giving rise to a reasonable suspicion of criminal behavior beyond such an infraction before the *Sassen* exception comes into play. Finally, while the record reveals inconsistency in Officer Darling's evidence about whether he did the pat down for weapons or for drugs, which pat down produced the marijuana and led to the search of the pickup, the rule is that our review is de novo on an objective basis when we evaluate the grounds for a search. See *State v. Romonto*, 190 Neb. 825, 212 N.W.2d 641 (1973) (in evaluation of reasonableness of search and seizure without warrant, it is imperative that facts be judged against objective standard, meaning that facts available to officer at moment of search or seizure should warrant person of reasonable caution to believe that action taken by officer was appropriate).

## CONCLUSION

Using an objective standard in our de novo review, we find that the district court did not err in denying Petersen's motion to suppress. We therefore affirm the conviction and sentence pronounced by the district court.

AFFIRMED.