STATE OF NEBRASKA, APPELLEE, V. DAVID L. SMITH, APPELLANT.

540 N.W.2d 375

Filed December 12, 1995. No. A-95-149.

James R. Mowbray, of Mowbray & Walker, P.C., for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

SIEVERS, Chief Judge, and MUES and INBODY, Judges.

INBODY, Judge.

## INTRODUCTION

This appeal arises from the conviction of David L. Smith for driving while intoxicated, second offense. Smith appealed this judgment and conviction, and the Lancaster County District Court affirmed the county court's judgment. Smith's sole

assignment of error on appeal is that the trial court erred in overruling his pretrial motion to suppress evidence. Smith contends that the evidence should have been suppressed as "fruit" of an unlawful stop and seizure of Smith. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

On February 26, 1994, Smith was given a citation for driving while intoxicated. At the arraignment on March 30, Smith pled not guilty, and the matter was set for trial. A motion to suppress was filed on April 27, alleging that the stop and seizure of Smith was in violation of his constitutional rights under the 4th and 14th Amendments to the U.S. Constitution and article I, §§ 1, 3, and 7, of the Nebraska Constitution.

On May 26, 1994, an evidentiary hearing was held on Smith's motion to suppress evidence. Smith's motion specifically went to whether or not the stop and seizure of Smith and his vehicle were based on reasonable and articulable suspicion that a crime had been, was, or was about to be committed. The only witness called during the motion to suppress was Deputy Stewart Danburg, the officer who effected the arrest.

Deputy Danburg testified that as of February 26, 1994, he had been working at the Lancaster County sheriff's office for approximately 1½ years, assigned to road patrol. On that night, he was working a 9 p.m. to 7 a.m. shift. While on patrol, Deputy Danburg came to the intersection of S.W. 98th and West Van Dorn Streets, in Lancaster County, from the south and observed a brown GMC pickup on the north and opposing side of the intersection. Deputy Danburg described both S.W. 98th Street and West Van Dorn Street, the intersecting street, as gravel roads. At that intersection there are stop signs for both northbound and southbound traffic. Therefore, S.W. 98th Street yields to West Van Dorn Street.

Deputy Danburg was traveling north at approximately 10:15 p.m., when he first observed the brown pickup, facing south, on the north side of the intersection. The pickup was observed to be stopped at the stop sign. When Deputy Danburg approached the intersection, the pickup was already stopped,

and after he had stopped at the stop sign, he waited for the pickup to proceed because the pickup had arrived at the intersection first, and Deputy Danburg was going to yield to it. He waited approximately 15 to 20 seconds, and when the pickup did not move, he proceeded through the intersection, continuing north on S.W. 98th Street. As Deputy Danburg drove by the pickup, he glanced out his side window and observed a person sitting in the driver's seat. On cross-examination, Deputy Danburg stated that he did not see anything unusual or notice anything suspicious as he passed the pickup.

Deputy Danburg thought it was "rather strange" that the vehicle had not moved the entire time that he was at the intersection, so he continued to watch the pickup in his rearview mirror, as he proceeded north, to see if it was going to move or not. He drove approximately one-half mile north of the intersection, and during that time he did not see the pickup move. He thought traveling that distance took approximately $1^{1/2}$ minutes. Deputy Danburg testified that again he "thought this was rather strange," so he turned around in the roadway and went back to check on the vehicle. As he pulled up behind the pickup, he noticed that the brake lights were on and the engine was running. After Deputy Danburg pulled up behind the pickup, he activated his vehicle's overhead flashing lights and proceeded to the pickup to make contact with the driver.

As Deputy Danburg approached the pickup, he observed a man sitting behind the steering wheel with his head leaning forward as if he were either asleep or unconscious. Deputy Danburg opened the door of the pickup and noticed that the vehicle was still in gear, so he placed the vehicle in park, and then proceeded to wake the man, later identified as David L. Smith.

Deputy Danburg said that he activated his vehicle's overhead lights because the pickup was not free to go until he was satisfied that everything was all right. If the pickup had started to move after he had activated the overhead lights, Deputy Danburg would have initiated another stop. At the end of the hearing, the motion to suppress was overruled.

The matter was reset for trial after Smith waived his right to a jury trial, and on August 10, 1994, the matter came on for trial by stipulation.

Prior to the trial by stipulation, Smith objected to any evidence that would be offered by the stipulation because that evidence had been obtained in violation of Smith's constitutional rights. Smith's objection was to preserve the trial court's ruling on the motion to suppress that had previously been heard. Because the only error on appeal is whether or not the trial court erred by failing to sustain the motion to suppress, the rest of the facts are not relevant to this particular appeal.

On August 25, 1994, Smith was found guilty of driving while intoxicated, and after the enhancement hearing, the offense was found to be Smith's second offense. Smith was then sentenced to 90 days' imprisonment and fined $500, and his driver's license was suspended for 1 year.

On August 25, 1994, Smith appealed the trial court's judgment and sentence and assigned as error that "[t]he trial court abused its discretion and committed an error of law by not sustaining the defendant's motion to suppress." On November 16, a hearing was held in district court, and at the conclusion of that hearing the matter was taken under advisement. On January 25, 1995, the district court entered an order affirming the county court's ruling. On February 9, Smith gave his notice of appeal to this court.

## ASSIGNMENT OF ERROR

Smith's sole assignment of error on appeal is that the trial court erred by not sustaining his motion to suppress.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is to be upheld on appeal unless it is clearly erroneous. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994); *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994); *State v. Ranson*, 245 Neb. 71, 511 N.W.2d 97 (1994).

In determining the correctness of a trial court's ruling on a suppression motion, an appellate court will accept the factual

determinations and credibility choices made by the trial court unless, in light of all the circumstances, such findings ·are clearly erroneous. *State v. DeGroat*, 244 Neb. 764, 508 N.W.2d 861 (1993); *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993); *State v. Harris*, 244 Neb. 289, 505 N.W.2d 724 (1993).

■ In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Grimes, supra*; *Dyer, supra*; *Ranson, supra*.

## ANALYSIS

The only issue on appeal is whether or not the county court erred by not granting Smith's suppression motion concerning evidence obtained as a result of Smith's seizure, evidence that was ultimately used by the State to convict Smith.

■ The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable search and seizure. If police unconstitutionally stop a person, evidence obtained by a search of the person stopped is constitutionally inadmissible as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Therefore, to determine whether evidence obtained in this case is constitutionally inadmissible, it is first necessary to determine whether the initial contact by Deputy Danburg violated the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution.

■ The U.S. Supreme Court and the Nebraska Supreme Court have consistently held that a motorist on a public highway or street may have a legitimate expectation of privacy within a motor vehicle. See, *Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); *State v. Childs*, 242 Neb. 426, 495 N.W.2d 475 (1993).

■ The law is equally clear regarding investigatory stops: "[P]olice can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the fourth

amendment." *State v. Staten*, 238 Neb. 13, 18, 469 N.W.2d 112, 116 (1991). Accord, *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992); *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992); *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991). "Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Staten*, 238 Neb. at 18, 469 N.W.2d at 116–17.

In this case, the police acted without a search warrant, therefore, the State had the burden to prove that the seizure of Smith was conducted under circumstances substantiating the reasonableness of such seizure. See *Childs, supra*. In determining whether a police officer has a constitutionally permissible reason to stop a person on a public street, a court must assess the totality of the circumstances surrounding the stop, including "all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is or has been or is about to be engaged in criminal behavior." *State v. Ebberson*, 209 Neb. 41, 45, 305 N.W.2d 904, 907 (1981).

Although it may be questionable whether the State demonstrated that Deputy Danburg had a reasonable and articulate suspicion that Smith had been, was, or was about to be involved in criminal activity, under appropriate circumstances a law enforcement officer may be fully justified in stopping or contacting a vehicle to provide assistance, without needing any reasonable basis to suspect criminal activity. As the U.S. Supreme Court noted in *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973):

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police–citizen contact involving automobiles will be substantially greater than police–citizen contact in a home or office. Some such contacts will occur because the officer may believe the

operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

See, also, *People v. Murray*, 137 Ill. 2d 382, 560 N.E.2d 309 (1990); *Crauthers v. State*, 727 P.2d 9 (Alaska App. 1986); *State v. Chisholm*, 39 Wash. App. 864, 696 P.2d 41 (1985); *State v. Goetaski*, 209 N.J. Super. 362, 507 A.2d 751 (1986).

Therefore, we need to determine if the facts of this case amounted to a constitutionally permissible reason for Deputy Danburg to return to the stop sign to see if Smith was all right under the community caretaking functions.

In this case, it is apparent that Deputy Danburg had justifiable reason to believe that something was wrong. As he was returning to the intersection, he observed that the pickup had not moved for several minutes. When Deputy Danburg pulled up behind the pickup, he observed that the brake lights were on and that there was no activity in the pickup. Danburg was therefore justified in believing that an exigent circumstance might exist, and he had good reason to make contact with Smith and to provide him aid, if necessary. When Deputy Danburg approached the vehicle to contact the driver, he noticed that Smith was sitting behind the steering wheel with his head leaning forward, as if he were either asleep or unconscious. Deputy Danburg then opened the door of the pickup, noticed that the vehicle was still in gear, and placed the vehicle in park. It was after this action that Deputy Danburg obtained information that led him to believe Smith was engaged in criminal activity.

These factors taken into account make it clear that Deputy Danburg did not have an intent to arrest or to search when he opened the door of the vehicle, placed the vehicle in park, and woke Smith to determine Smith's condition. Deputy Danburg came back to the intersection to determine what, if anything, was wrong and the condition of the driver and to

provide aid, if necessary. These actions fall completely within the community caretaking exception to the Fourth Amendment prohibition against warrantless, nonconsensual searches. We find that a caretaking encounter does not foreclose an officer from making observations that lead to a reasonable suspicion of criminal activity. *State v. Langseth*, 492 N.W.2d 298 (N.D. 1992). We believe that Deputy Danburg's actions were reasonable—engaging his vehicle's emergency lights and contacting Smith, following what Deputy Danburg reasonably interpreted to be an exigent circumstance, which allowed him to enter Smith's vehicle without a warrant and without consent. Therefore, the trial court was correct in refusing to suppress the evidence seized as a result of Deputy Danburg's entering Smith's vehicle, and there is no error.

## CONCLUSION

Having found that Smith's assignment of error is without merit, we therefore affirm the judgment and sentence of the trial court in all respects.

AFFIRMED.