STATE OF NEBRASKA, APPELLEE, V.
SAUL L. BAKEWELL, APPELLANT.

730 N.W.2d 335

Filed April 13, 2007.    No. S-06-765.

Adam J. Sipple, of Johnson & Mock, for appellant.

Jon Bruning, Attorney General, and Erin E. Leuenberger for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Miller-Lerman, JJ.

Heavican, C.J.

## BACKGROUND

Saul L. Bakewell was charged with driving under the influence, a Class W misdemeanor. Prior to trial, Bakewell filed a motion to suppress "any observations of Sgt. Walter Groves, III, of the Washington County Sheriff's Department, any admissions of Defendant, or any other evidence obtained subsequent to the stop of his vehicle." Following a hearing, the county court denied the motion to suppress. Bakewell was convicted and sentenced to probation, and he appealed to the district court. The district court, acting as an intermediate court of appeals, affirmed. Bakewell appeals.

### July 3, 2005, 3:15 a.m.

The testimony at the hearing on the motion to suppress and at trial reveals the following: On July 3, 2005, at approximately 3:15 a.m., Sgt. Walter Groves was on patrol in a marked sheriff's cruiser driving northbound on U.S. Highway 75 in Washington County, Nebraska. Groves testified that while on patrol, he noticed a vehicle, which was later determined to be driven by Bakewell, headed southbound on Highway 75. After noting that the vehicle appeared to have crossed the centerline, Groves turned southbound and began to follow the vehicle. After following the vehicle for approximately 2 to 2½ miles, Groves noted that on several occasions, the vehicle slowed down, almost came to a complete stop in the middle of the road, and eventually pulled off onto the shoulder of the highway. We note that in his reply brief, Bakewell suggests "the officer's tenacious trailing of Bakewell's vehicle likely contributed to the manner in which [he] pulled to the side of the road."[1] However, we have reviewed the video of this incident taken from a camera in Groves' cruiser and, while it is not possible to precisely estimate the distance between Groves' cruiser and Bakewell's vehicle, our review shows nothing that would corroborate Bakewell's contention.

---

[1] Reply brief for appellant at 3.

Groves testified that "[w]hen the vehicle pulled over to the side I pulled in behind the vehicle, activated my emergency lights for safety reasons and then exited my patrol car and made contact with the driver." Groves indicated that he "pulled in behind the vehicle to conduct a safety check of the vehicle, make sure that everything was okay and there was [sic] no problems." Groves testified that the first question he asked of Bakewell was whether "everything was okay." In the video, Bakewell can be heard to respond that he was lost.

On cross-examination, Groves acknowledged that he had seen Bakewell's arm extended out of his car window prior to Groves' pulling off the highway and that this action "was consistent with an effort by [Bakewell] to waive [sic] [Groves] around." A review of the video confirms Groves' version of these events, except that Bakewell's arm extended out of his car window is not visible on the video.

The county court denied Bakewell's motion to suppress, finding that Groves' actions fell within the community caretaking exception to the Fourth Amendment. The district court affirmed. Bakewell appealed. We moved this case to our docket pursuant to our authority to regulate the dockets of this court and that of the Nebraska Court of Appeals.[2]

## ASSIGNMENT OF ERROR

Bakewell assigns that the district court erred in affirming the county court's denial of his motion to suppress.

## STANDARD OF REVIEW

As an initial matter, Bakewell contends that the district court erred in the standard of review it employed when reviewing the county court's order denying suppression. A review of the district court's order indicates it reviewed the county court's order for clear error. Bakewell argues that the court should have employed the two-part standard which reviews historical facts for clear error and determinations of reasonable suspicion de novo.

■ In this case, we are not reviewing the county court's determination of reasonable suspicion, but instead are reviewing its determination that the community caretaking exception to the

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

Fourth Amendment applied. However, we agree with Bakewell that the proper standard is the two-part standard set forth by the U.S. Supreme Court in *Ornelas v. United States*.[3] Accordingly, we will review de novo the county court's determination that the community caretaking exception applied, while the county court's findings of historical facts are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial court.[4]

## ANALYSIS

On appeal, Bakewell argues that the county court erred in overruling his motion to suppress. Bakewell argues that Groves lacked an objectively reasonable basis to believe Bakewell was in need of assistance. The State contends that Groves did not seize Bakewell for purposes of the Fourth Amendment but, even if he did, that seizure was reasonable under the community caretaking exception to the Fourth Amendment. We agree with the State and conclude that even assuming Groves did seize Bakewell for purposes of the Fourth Amendment, such seizure was reasonable under the community caretaking exception.

### COMMUNITY CARETAKING EXCEPTION
### TO FOURTH AMENDMENT

The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Nebraska Constitution provides similar protection.[5] Moreover, this court and the U.S. Supreme Court have held that

---

[3] See *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996).

[4] Cf., *U.S. v. Ball*, 90 F.3d 260 (8th Cir. 1996); *State v. Eberly*, 271 Neb. 893, 716 N.W.2d 671 (2006); *State v. Verling*, 269 Neb. 610, 694 N.W.2d 632 (2005).

[5] See Neb. Const. art. I, § 7.

a motorist on a public highway or street may have a legitimate expectation of privacy within a motor vehicle.[6]

The State asks this court to apply the community caretaking exception to the Fourth Amendment to Groves' actions. This exception is rooted in *Cady v. Dombrowski*,[7] where the U.S. Supreme Court noted that

> [b]ecause of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.[8]

Most jurisdictions which have considered the question of whether to adopt this exception have done so. In a few instances, courts have declined the invitation to adopt the exception based on the circumstances presented, generally concluding that on the facts before the court, the exception would not apply.[9] This court has never had the occasion to apply this exception, though the Court of Appeals has done so.[10]

---

[6] See, *Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); *State v. Childs*, 242 Neb. 426, 495 N.W.2d 475 (1993).

[7] *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973).

[8] *Id.*, 413 U.S. at 441.

[9] See, *United States v. Dunbar*, 470 F. Supp. 704 (D. Conn. 1979); *Rowe v. State*, 363 Md. 424, 769 A.2d 879 (2001); *Barrett v. Com.*, 250 Va. 243, 462 S.E.2d 109 (1995).

[10] See *State v. Smith*, 4 Neb. App. 219, 540 N.W.2d 374 (1995).

In accordance with these other jurisdictions and the Court of Appeals, we hereby adopt the community caretaking exception to the Fourth Amendment. In so doing, we emphasize the narrow applicability of this exception. We agree with the other courts which have held that this exception should be narrowly and carefully applied in order to prevent its abuse.[11]

### APPLICATION OF COMMUNITY CARETAKING EXCEPTION

■ Having adopted the exception and in keeping with its narrow applicability, we next consider under what circumstances the exception should apply. In *Smith*, the Court of Appeals "assess[ed] the totality of the circumstances surrounding the stop, including 'all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction . . . .'"[12] Other jurisdictions recognizing and applying the community caretaking exception have adopted similar standards.[13] We likewise adopt this standard.

In considering the totality of the circumstances surrounding the stop, including Groves' objective observations and considerations based upon his training, as well as our de novo review, we conclude Groves' stop of Bakewell was reasonable under the community caretaking exception to the Fourth Amendment.

The record indicates the incident in question occurred at 3:15 a.m. There was little or no traffic present on this stretch of highway at the time of the incident. Bakewell's vehicle stopped or slowed considerably five times within approximately 90 seconds while traveling down the highway, with the vehicle eventually pulling off onto the shoulder of the road. Considering the totality of the circumstances, it was reasonable for Groves to conclude that Bakewell was lost or that something was wrong with

---

[11] See, *State v. Rinehart*, 617 N.W.2d 842 (S.D. 2000); *Wright v. State*, 7 S.W.3d 148 (Tex. Crim. App. 1999).

[12] *State v. Smith, supra* note 10, 4 Neb. App. at 225, 540 N.W.2d at 379 (quoting *State v. Ebberson*, 209 Neb. 41, 305 N.W.2d 904 (1981)).

[13] *Wright v. State, supra* note 11; *State v. Washington*, 296 N.J. Super. 569, 687 A.2d 343 (1997). Cf., *Poe v. Com.*, 169 S.W.3d 54 (Ky. App. 2005); *State v. Vistuba*, 251 Kan. 821, 840 P.2d 511 (1992), *overruled on other grounds, State v. Field*, 252 Kan. 657, 847 P.2d 1280 (1993); *State v. Marcello*, 157 Vt. 657, 599 A.2d 357 (1991); *State v. Pinkham*, 565 A.2d 318 (Me. 1989).

Bakewell, his vehicle, or inside his vehicle. Further, particularly given the early hour of the morning, it was reasonable for Groves to assume that his assistance might be welcomed. In fact, after approaching Bakewell's vehicle, the first question posed by Groves was whether Bakewell was all right, to which Bakewell responded that he was lost.

Our conclusion that Groves' actions were reasonable is consistent with decisions applying the exception in other jurisdictions. The court in *State v. Martinez*[14] held that the community caretaking function was implicated where a driver was stopped at 2 a.m. for traveling at a rate of speed less than 10 miles per hour. In *State v. Rinehart*,[15] the community caretaking function was found applicable where a vehicle was traveling at an estimated speed of 20 to 25 miles per hour in a 40-mile-per-hour zone.

Upon our de novo review of the record, we conclude that under the community caretaking exception to the Fourth Amendment, it was reasonable for Groves to approach Bakewell's vehicle. Bakewell's assignment of error is without merit.

## CONCLUSION
The judgment of the district court is affirmed.

AFFIRMED.

GERRARD, J., not participating.

---

[14] *State v. Martinez*, 260 N.J. Super. 75, 615 A.2d 279 (1992).

[15] *State v. Rinehart, supra* note 11.