IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. RIVERA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JONATHAN J. RIVERA, APPELLANT.

Filed March 14, 2017.    No. A-16-255.

Appeal from the District Court for Lancaster County, ANDREW R. JACOBSEN, Judge, on appeal thereto from the County Court for Lancaster County, THOMAS W. FOX, Judge. Judgment of District Court affirmed.

Mark E. Rappl for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Jonathan Rivera was found guilty of one count of driving while under the influence, second offense, over .15, on April 27, 2015. The county court for Lancaster County sentenced him to two years' probation, 30 days in jail, and a $1,000 fine. Rivera appealed his conviction to the district court, where it was affirmed. Rivera now appeals to this court. Following our review of the record, we affirm.

### BACKGROUND

On May 24, 2014, Nebraska Game and Parks Commission conservation officers Travis Shepler and Dudley Sorensen were on patrol in the Branched Oak State Recreation Area. At approximately 10:35 p.m., they stopped to investigate a potential incident involving two groups of

people on opposite sides of the road. Shepler was driving their patrol truck and he parked it on the paved roadway towards the right side. On either side of the paved roadway was a grassy shoulder. The patrol truck had red lights and Nebraska Game and Parks decals on it.

Both officers exited the patrol truck and approached both groups of people. Shepler then returned to the patrol truck to call dispatch while Sorensen remained out of the vehicle with the groups of people. While in the patrol truck, at approximately 10:40 p.m., Shepler saw a vehicle, driven by Rivera, approach from behind. The vehicle briefly stopped directly behind the patrol truck and then drove off the paved roadway onto the grass on the right-hand side of the road.

As the vehicle slowly passed the patrol truck on the right, Shepler testified that he became worried about the safety of the people standing near the edge of the roadway ahead of the vehicle. Shepler exited the patrol truck and walked around the front of it, towards the approaching vehicle. The other vehicle stopped when it was even with the patrol truck, approximately 15 to 20 feet away from the group of pedestrians. Rivera testified that he stopped because he saw Shepler's hand in the air near his head and he was under the impression that Shepler wanted him to stop, although Shepler said he did not recall making any gestures. At no point in time did Shepler activate the lights or siren on his patrol truck, block the vehicle from passing, or display his firearm.

Shepler approached the vehicle and made contact with the driver, later identified as Rivera. Shepler told Rivera that if he waited a few minutes, he would move his patrol truck. He did not ever tell Rivera that he was not free to go. Upon making contact with him, Shepler observed that Rivera had bloodshot, watery eyes, and slurred speech. When asked if he had been drinking, Rivera admitted that he had been. Shepler then initiated a driving under the influence investigation, which resulted in Rivera's arrest.

Rivera was charged with one count of driving under the influence, second offense, over .15. Rivera filed a motion to suppress and a hearing on the motion was held. The county court overruled Rivera's motion and, subsequent to a stipulated trial, found him guilty of the charge.

Rivera then appealed his conviction to the district court, alleging that the county court erred in overruling his motion to suppress. The district court affirmed Rivera's conviction. Rivera now appeals to this court.

## ASSIGNMENTS OF ERROR

Rivera assigns, restated, that the district court erred in affirming the county court's order overruling his motion to suppress.

## STANDARD OF REVIEW

In reviewing a trial court's order on a motion to suppress based on a claimed violation of the Fourth Amendment, appellate courts apply a two-part standard of review. *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014); *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014). Regarding historical facts, appellate courts review the trial court's findings for clear error. *State v. Hill, supra*. But whether those facts trigger or violate Fourth Amendment protections is a question of law that appellate courts review independently of the trial court's determination. *Id*.

ANALYSIS

Rivera argues that the district court erred in affirming the county court's order overruling his motion to suppress. He argues that his arrest was the result of Shepler unlawfully seizing his vehicle, thereby violating his Fourth Amendment rights against unreasonable search and seizure. Specifically, Rivera argues that there was no evidence that he had committed or was committing a crime and that the community caretaking exception to the Fourth Amendment did not apply under the circumstances. We disagree.

The Fourth Amendment guarantees the right to be free from unreasonable search and seizure. *State v. Bol*, 288 Neb. 144, 846 N.W.2d 241 (2014). This guarantee requires that an arrest be based on probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity. *Id*. A traffic stop requires only that the investigating officer have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. *Id*. To determine whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account. *Id*.

In the absence of any evidence that a crime had been or was being committed, the court must determine whether any exceptions to the Fourth Amendment apply. *State v. Rohde*, 22 Neb. App. 926, 864 N.W.2d 704 (2015). One such exception is the community caretaker exception, first recognized by the United States Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523 (1973). The Court noted that:

> Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id*.

The Nebraska Supreme Court adopted the community caretaker exception in *State v. Bakewell*, 273 Neb. 372, 730 N.W.2d 335 (2007), and applied it to determine whether the seizure of a vehicle was reasonable. It held that to determine when the exception should apply, the court should assess the totality of the circumstances surrounding the stop, including all objective observations and considerations, as well as the suspicion drawn by a trained and experienced officer by inference and deduction. *Id*. If, based upon the totality of the circumstances, the seizing officer had a reasonable basis to believe his assistance was necessary, the stop is not unconstitutional. *Id*. The Nebraska Supreme Court also held that this exception should be narrowly and carefully applied in order to prevent its abuse. *Id.*

Nebraska law has applied the community caretaking exception in few reported appellate cases. It has been found to apply in three cases, including a case wherein a vehicle was being driven in an erratic manner, *State v. Bakewell, supra*; a case wherein a vehicle was stopped at an intersection for a period of several minutes, *State v. Smith*, 4 Neb. App. 219, 540 N.W.2d 374 (1995); and a case wherein a passenger was observed to have half of her body out of a moving vehicle's moon roof and was waving her arms, *State v. Rohde, supra*. While all of these cases have

concerned an exigency or need to protect or assist an occupant of the vehicle in question, we find the same analysis to be applicable when those needing protection are located outside the vehicle. In fact, it was the general public that the Supreme Court sought to protect when first applying the community caretaker exception in *Cady v. Dombrowski, supra.*

In the present case, there was no indication when Shepler initially made contact with Rivera that Rivera had committed or was committing any crime. Shepler testified that he approached Rivera's vehicle as it passed his patrol truck on the right-hand side because he was concerned about the group of people along the roadway approximately 15 to 20 feet ahead of the vehicle and wanted to make sure that Rivera stopped before hitting them. He testified that his only concern was to keep the group, including his partner, Sorensen, safe. Rivera argues that the county and district courts erred in finding that the community caretaking exception to the Fourth Amendment applied under these circumstances because the record did not establish that there actually was a group of people near the roadway ahead of his vehicle. Moreover, he claims that even if the group of people was still present beside the road, there was no reason for Shepler to believe that they were in danger due to Rivera's driving since both Rivera and Shepler testified that his vehicle was moving at a slow speed, his headlights were illuminated, and Shepler conceded that Rivera could have maneuvered his truck back onto the paved roadway without striking anyone.

Under our two-part standard of review, we accept the factual findings of the trial court unless we find clear error. Here, the trial court found that there was a group of people standing in the dark near the roadway approximately 15 to 20 feet ahead of Rivera's vehicle. Furthermore, the county court found that Shepler approached Rivera's vehicle due to his concern for the safety of those people and the potential outcome if he chose not to act. The trial court reached these findings after hearing testimony from three witnesses, Shepler and Sorensen as well as Rivera, and having the opportunity to observe their demeanor and assess their credibility.

Shepler testified that the group of pedestrians was still present along the roadway when Rivera's vehicle approached them. Sorensen testified that there had been a group of people standing in that area when he and Shepler arrived at that location. He testified that after speaking with the pedestrians, he walked away to ask an unrelated group to turn down their loud radio and when he returned, he saw Shepler speaking to Rivera in his vehicle. At that point in time, Sorensen said that the only group of people he saw was located behind the patrol vehicle. However, he said that he was not sure when the initial group in front of the patrol vehicle had dispersed. Rivera testified that he did not recall seeing any pedestrians standing in front of his vehicle, but also said that it was really dark and admitted that drinking alcohol can affect your memory. An appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses . . . reweigh the evidence presented, which are within a fact finder's province for disposition. *State v. Saylor*, 294 Neb. 492, 883 N.W.2d 334 (2016). As such, factual findings will not be disturbed on appeal absent clear error. *State v. Hill, supra.* Here, the county court was presented with conflicting evidence regarding whether the group of pedestrians was still standing along the road ahead of Rivera's vehicle. After hearing testimony from witnesses on both sides, the court found that the group was still present when Rivera's vehicle approached. This finding is supported by Shepler's testimony and the record before us. We therefore find no clear error in these determinations and turn to the question of reasonableness.

The dissent apparently questions the reasonableness of Shepler's concern for the pedestrians and his partner, stating "[t]hese facts do not rise to the type of emergency or exigent circumstances courts should insist upon when Fourth Amendment protections are at stake." As instructed by *State v. Rohde, supra*, "a court should assess the totality of the circumstances surrounding the stop, including all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction. *Id*. at 932-33, 864 N.W.2d at 709 (2015). In *Rohde*, this court noted several factors that can be used to assess the reasonableness of an officer's actions when acting in a community caretaking capacity. These factors include the nature and level of distress, the location, access to assistance, and the extent to which, without officer assistance, the driver presented a danger to himself or others. *Id.* We find that several of these factors weigh in favor of the lower court's ruling.

This incident took place along a darkened roadway at approximately 10:40 p.m. Rivera testified that the location was "really dark." Despite his headlights being illuminated, he stated that he could not see the lights or decals on Shepler's patrol truck as he approached it nor could he see any people standing near the roadway ahead of him. The time of night and visibility suggest that it was reasonable for Shepler to suspect that Rivera may not have been able to see the group of people standing along the road as he approached them, thereby making it necessary for Shepler to intervene before Rivera's truck came closer to the group.

Additionally, the extent to which Rivera presented a danger to others, if not for the action of Shepler, was great. While Rivera stresses that he was driving at a slow speed, a moving vehicle at any speed is inherently dangerous to pedestrians and a collision can be fatal. This danger increases when a driver does not know that there are pedestrians nearby. While it may have been possible for Rivera to maneuver his vehicle back onto the paved roadway without hitting or endangering anyone, it is equally possible that, not knowing anyone was there, Rivera would not have returned to the roadway in time to avoid the group. There was no way to ensure the safety of the group, including Sorensen, without making contact with Rivera. Shepler was not required to delay an attempt to intervene and, in fact, he would have been considered derelict had he failed to act promptly and Rivera did cause harm to anyone while he stood by and watched. *State v. Rohde, supra*.

In considering the totality of the circumstances surrounding the stop, wherein the immediate safety of pedestrians, including a law enforcement officer, is in jeopardy, together with Shepler's objective observations and considerations based upon his training, we conclude that Shepler's stop of Rivera was reasonable under the community caretaking exception to the Fourth Amendment.

Rivera also asserts that the community caretaking exception should not apply in this case because Shepler improperly created the alleged exigency by blocking the paved roadway with his patrol truck. We are not persuaded by this argument. The county court found that the paved roadway was approximately the width of two vehicles and both Shepler and Sorensen testified that there was more room to the left-hand side of the patrol truck than there was to the right. They testified that a vehicle could have passed on the left. The exigency was created when Rivera chose to pass the patrol truck on the right, where there was still a group of pedestrians standing by the roadside. Had he chosen to pass on the left, the pedestrians would not have been directly in front

of his vehicle and it would not have been so imperative that Shepler ensured that he stopped in order to protect the group. Furthermore, any time there are pedestrians on or near a roadway, particularly in the dark, it is reasonable for a law enforcement officer to ensure that drivers are made aware of their presence and proceed through the area accordingly.

Rivera claims that even if Shepler was justified in briefly stopping his vehicle, he impermissibly exceeded the scope of the seizure. He argues that Shepler did not use the least intrusive means available and that he could have satisfied the purpose of the seizure using hand gestures to stop Rivera, rather than making contact. We disagree. By Rivera's own admission, he stopped because he thought he saw Shepler gesturing for him to do so, but he was not looking at Shepler's hand or fingers; he simply saw Shepler's hand near his head. If Rivera was not paying attention to what Shepler's hand was doing, and in fact could not tell for certain if Shepler was gesturing to him at all, it is clear that using hand gestures would not have been sufficient in this case.

Considering the totality of the circumstances surrounding the stop, we conclude that it was reasonable for Shepler to believe it necessary to make contact with Rivera in order to protect the safety of the group standing near the road. As such, we find that the lower court properly applied the community caretaking exception in finding that the stop did not violate the Fourth Amendment.

We also note that the State argued in its brief that the contact between Shepler and Rivera constituted a "tier one" contact, meaning voluntary cooperation of a citizen through noncoercive questioning that does not involve any restraint on the citizen's liberty, thus not implicating any of the Fourth Amendment protections. Brief of Appellee at 10-13. However, this argument is raised now for the first time and was not presented to the trial court. Absent plain error, an issue not raised to the trial court will not be considered by an appellate court on appeal. *State v. Kays*, 289 Neb. 260, 854 N.W.2d 783 (2014). Therefore, we decline to address this argument.

CONCLUSION

Following our review of the record, we find Rivera's assignment of error to be without merit and therefore affirm the district court's ruling.

AFFIRMED.

BISHOP, Judge, dissenting.

Any time courts chip away at the protections afforded citizens under our federal and state constitutions, caution should be exercised. The Nebraska Supreme Court has said as much in its one decision applying the community caretaking exception. In *State v. Bakewell*, 273 Neb. 372, 730 N.W.2d 335 (2007), our Supreme Court held that the community caretaking exception to the Fourth Amendment must be applied narrowly and carefully in order to prevent its abuse. In the present case, however, the majority has expanded the community caretaking exception to permit a law enforcement officer to stop a lawfully operated vehicle if the officer's stated reason is that he anticipated a danger from that vehicle to persons outside the vehicle. I dissent because the objective observations and considerations surrounding the stop do not show that a true emergency or exigent circumstance existed to justify the stop. The majority acknowledges that although past cases addressing the community caretaking exception in Nebraska "have concerned an exigency or need

to protect or assist an occupant of the vehicle in question," the exception should be expanded "to be applicable when those needing protection are located outside the vehicle." The majority states, "In fact, it was the general public that the Supreme Court sought to protect when first applying the community caretaker exception in [*Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973)]." However, *Cady* involved the warrantless search for a police service revolver inside an impounded car (following a one-vehicle accident and subsequent drunk driving arrest) that ultimately turned up evidence tying the driver to a murder; it did not involve a traffic stop of a vehicle being lawfully operated, as was the case here.

While I certainly agree that law enforcement may need to engage in noninvestigatory searches and seizures when emergency or exigent situations arise, they must be limited to those circumstances where in addition to the officer's stated reasons, all objective observations and considerations demonstrate that such an emergency or dangerous situation actually existed or was reasonably perceived to exist based upon an officer's training and experience. The alleged danger in this case was that there were people in the park, standing 15 to 20 feet ahead of Rivera's vehicle, who Shepler anticipated Rivera might not see. Shepler believed this even though the headlights of Rivera's vehicle were on, Rivera was driving at a slow enough speed that Shepler had time to exit his vehicle and walk around the front of it, and then walk towards Rivera's vehicle to stop it, apparently without fear that he would be struck. Further, even Shepler conceded that Rivera could have maneuvered his vehicle back onto the paved roadway without striking anyone. These facts do not rise to the type of emergency or exigent circumstances courts should insist upon when Fourth Amendment protections are at stake. Emergency or exigent circumstances cannot objectively include situations where assumptions are made that a slow moving vehicle "might" not get back on the road after passing a patrol vehicle blocking the road, and the driver "might" not see people 15 to 20 feet down the road despite the vehicle's headlights being on and its very slow rate of speed. There are innumerable dangers involving motor vehicles to persons located outside those vehicles that can be anticipated based on any variety of subjective and objective factors; this is why the narrow application of this exception is necessary. An officer's subjectively stated "anticipated" danger, based upon that officer's training and experience, must be supported by the totality of the circumstances surrounding the stop, including all objective observations and considerations. See *State v. Bakewell*, *supra*. I do not think it was the intent of the U.S. Supreme Court in *Cady v. Dombrowski*, *supra*, to dilute Fourth Amendment protections in the name of community caretaking functions; rather, it recognized that these noninvestigatory functions of law enforcement provide an important service to the general public, and in limited circumstances, warrantless searches and seizures may be necessary.

Warrantless searches and seizures justified by the community caretaking functions of law enforcement have been addressed in a trilogy of U.S. Supreme Court cases. As noted by the majority, it was first addressed in *Cady v. Dombrowski*, *supra*. *Cady* did not involve a traffic stop of a lawfully operated vehicle; rather, it considered whether a warrantless search of an impounded vehicle was reasonable. *Cady* focused on the fact that the defendant's vehicle was disabled from an accident, was a nuisance on the highway, and due to the defendant's intoxication and subsequent coma, the Wisconsin police had to make arrangements to have the vehicle towed and stored. Further, the search of the vehicle to retrieve the defendant's service revolver (he was a Chicago

police officer) was standard procedure for the Wisconsin police department to protect the public from the possibility it would fall into "untrained or perhaps malicious hands." *Cady v. Dombrowski*, 413 U.S. at 443. *Cady* concluded that the "type of caretaking 'search' conducted here" of a vehicle "placed where it was by virtue of lawful police action, was not unreasonable solely because a warrant had not been obtained." 413 U.S. at 447-48.

A few years after *Cady*, the U.S. Supreme Court addressed community caretaking functions once again in *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). *Opperman* upheld a warrantless inventory search of an impounded vehicle because it was a routine practice for local police departments to secure and inventory vehicles in order to protect the owner's property, protect police against claims of lost or stolen property, and to protect the police from potential danger. "These caretaking procedures have almost uniformly been upheld by the state courts, which by virtue of the localized nature of traffic regulation have had considerable occasion to deal with the issue," and "state courts have overwhelmingly concluded that, even if an inventory is characterized as a 'search,' the intrusion is constitutionally permissible." *South Dakota v. Opperman*, 428 U.S. at 369-371.

Finally, in *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987), another vehicle inventory search was at issue. After the defendant was arrested and taken into custody for driving under the influence of alcohol, but before a tow truck took his van to an impoundment lot, an officer inventoried the contents of the van. A backpack in the van contained controlled substances, cocaine paraphernalia, and cash. *Bertine* noted that the van was inventoried in accordance with local police procedures. Further, "[t]he standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures. . . . The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations." *Colorado v. Bertine*, 479 U.S. at 371 (quoting from *South Dakota v. Opperman*, *supra*.) Referring to *Opperman*, the *Bertine* court "observed that our cases accorded deference to police caretaking procedures designed to secure and protect vehicles and their contents within police custody." *Colorado v. Bertine*, 479 U.S. at 372.

Notably, none of the U.S. Supreme Court community caretaking cases involved traffic stops of lawfully operated vehicles, nor did they involve warrantless searches into homes. Nevertheless, the community caretaking exception has been expanded to include traffic stops of vehicles, see *State v. Bakewell*, 273 Neb. 372, 730 N.W.2d 335 (2007) (reasonable for officer to conduct safety check of vehicle that was driving erratically under community caretaking exception to the Fourth Amendment); and warrantless entry into homes, see *United States v. Smith*, 820 F.3d 356 (8th Cir. 2016) (community caretaking functions are performed by law enforcement to help those in danger; police officer may enter a residence without a warrant as a community caretaker where the officer has a reasonable belief than an emergency exists requiring his or her attention).

It has been questioned whether *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973), actually "intended to create a new stand-alone warrant exception." *State v. Vargas*, 63 A.3d 175, 182 (N.J. 2013). The New Jersey Supreme Court points out that *Cady*, *Opperman*, and *Bertine*, did not carve out community caretaking as an exception to the warrant requirement. "Those cases never even referred to a community-caretaking doctrine. All three cases

- 8 -

involved permissible inventory searches conducted in accordance with standard police procedures." *State v. Vargas*, 63 A.3d at 184. That said, the New Jersey Supreme Court goes on to state, "No one disputes that police officers acting in a community-caretaking capacity provide a wide range of social services outside of their traditional law enforcement and criminal investigatory roles." *Id.* at 188. "In performing community-caretaking tasks, however, police officers must still comply with the dictates of the Fourth Amendment[.]" *Id.* "[O]ur constitutional jurisprudence recognizes that police officers or first responders, in carrying out their community-caretaking responsibilities, may not have time to secure a warrant when emergent circumstances arise and an immediate search is required to preserve life or property." *Id.* at 188. "Under our state law jurisprudence--outside of the car-impoundment context--warrantless searches justified in the name of the community-caretaking doctrine have involved some form of exigent or emergent circumstances." *Id.* at 189.

It certainly makes sense that warrantless searches under a community caretaking exception should only include those situations in which an emergency exists requiring immediate action to protect life or prevent serious injury. Further, such an emergency should not only be subjectively perceived by a police officer based on that officer's training and experience, but all objective observations and considerations should likewise support that such an emergency or dangerous situation existed or was reasonably perceived. Past Nebraska cases have been consistent with this standard. In the first Nebraska appellate decision to apply this exception, *State v. Smith*, 4 Neb. App. 219, 540 N.W.2d 374 (1995), the defendant's vehicle was stopped at a stop sign with its engine running and brake lights on, and the vehicle failed to move even after a passing deputy drove one-half mile past the vehicle. When the deputy turned around and approached the vehicle, the defendant appeared to be either asleep or unconscious. This court relied on language from *Cady*, regarding the community caretaking functions of police officers, to conclude that the deputy "had a justifiable reason to believe that something was wrong[,]" he was "justified in believing that an exigent circumstance might exist, and he had good reason to make contact with [the defendant] and to provide him aid, if necessary." *State v. Smith*, 4 Neb. App. at 226, 540 N.W.2d at 379. *Smith* demonstrates that, in addition to the officer's stated reason for being concerned something was wrong, all objective observations and considerations likewise supported that such an emergency or dangerous situation may have existed.

The community caretaking exception was next raised in *State v. Bartholomew*, 258 Neb. 174, 602 N.W.2d 510 (1999). In that case, a sheriff's deputy stopped the defendant's vehicle because of sparks being emitted from the vehicle. The defendant was subsequently convicted of driving with a suspended license; he challenged the traffic stop on appeal. Our Supreme Court noted that it was a traffic infraction to drive a vehicle with a muffler in disrepair, and a traffic violation creates probable cause to stop the driver of a vehicle. The Supreme Court was also asked to recognize a community caretaking exception to the Fourth Amendment, but the court declined to consider "the so-called community caretaking exception" given the circumstances of the case. *Id.* at 179, 602 N.W.2d at 514.

The following year, in *State v. Scovill*, 9 Neb. App. 118, 608 N.W.2d 623 (2000), this court found that the community caretaking exception did not apply because there was no evidence of exigent circumstances. In *Scovill*, incriminating evidence was found when a trooper searched a car

following a one-car accident. The trooper opened a glove box because he was curious as to who owned the car. The State argued that the search of the glove box fell under a public caretaking function as part of an inventory search. This court disagreed, stating, "While searches and seizures conducted pursuant to a warrant supported by probable cause are generally considered to be reasonable, warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions which must be jealously and carefully drawn . . . and applied only where there is a showing that the exigencies of the situation made that course imperative." *Id.* at 124, 608 N.W.2d at 630 (quoting from *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997)). The "recognized exceptions to the Fourth Amendment's warrant requirement as applied to automobiles include probable cause, exigent circumstances, consent, search incident to arrest, inventory search, and plain view." *State v. Scovill*, 9 Neb. App. at 125, 608 N.W.2d at 630 (quoting from *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996)). *Scovill* noted that the "progeny of U.S. Supreme Court cases regarding inventory searches has consistently required showing some standardized procedure or established routine[,]" and that "requiring some standardized criteria or established routine to regulate inventory searches prevents such searches from becoming a pretext for general rummaging to find incriminating evidence." *Id.* at 126, 608 N.W.2d at 630-31. After concluding that the State failed to put on any evidence regarding procedures or routines, *Scovill* held that the inventory search exception did not apply, and further, since there was no evidence suggesting the presence of any exigent circumstances, the community caretaking exception also did not apply.

The only Nebraska Supreme Court case to address the community caretaking exception, *State v. Bakewell*, 273 Neb. 372, 730 N.W.2d 335 (2007), involved an officer conducting a safety check of vehicle that was being driven erratically--crossing a center line, slowing down almost to a complete stop in the middle of the road, and finally pulling onto the shoulder of the highway. *Bakewell* adopted the community caretaking exception to the Fourth Amendment, but "in doing so, [it] emphasize[d] the narrow applicability of this exception[,]" and it agreed "with other courts which have held that this exception should be *narrowly and carefully applied* in order to prevent its abuse." *Id.* at 377, 730 N.W.2d at 338 (emphasis supplied). Determining under what circumstances the exception should apply, our Supreme Court adopted the standard that the totality of the circumstances surrounding the stop should be assessed, "including all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction." *Id.* at 377, 730 N.W.2d at 339. This standard necessitates consideration of both subjective and objective evidence in a totality of the circumstances analysis. The officer's subjective reasoning for the stop should be supported by objective observations and considerations surrounding the stop, as occurred in *Bakewell*.

In *State v. Moser*, 20 Neb. App. 209, 822 N.W.2d 424 (2012), this court addressed the community caretaking exception in a postconviction appeal asserting ineffective assistance of counsel (counsel advised defendant he had no defense to the stop of his vehicle). In *Moser*, a trooper observed the defendant's vehicle traveling on a highway with a portion of the passenger side of the windshield shattered, and the trooper believed the driver would have difficulty seeing cross-traffic from the right, and that "the shatter pattern of [the defendant's] windshield could cause a wreck and was a safety concern." *Id.* at 214, 822 N.W.2d at 429. After determining that no

traffic violation supported the stop of the defendant's vehicle, this court then considered the community caretaking exception. *Moser* concluded that the defendant's vehicle had not been traveling in an erratic manner, such as the vehicle in *State v. Bakewell, supra*; it was not stopped in traffic, as the vehicle in *State v. Smith, supra*; nor was there any evidence it had been involved in an accident. "In short, there was no sense of urgency to check on the welfare of the driver in this case, as was present in *Bakewell* or *Smith*." *State v. Moser*, 20 Neb. App. at 223, 822 N.W.2d at 435. The matter was remanded for further proceedings.

Finally, in *State v. Rohde*, 22 Neb. App. 926, 864 N.W.2d 704 (2015), the community caretaking exception was applied to circumstances where in the early morning hours, a police officer observed a female passenger with her head and part of her torso "sticking out of the moonroof" of a vehicle and she was waving her arms. *Id*. at 928, 864 N.W.2d at 707. The officer stopped the vehicle because he thought the conduct was unsafe and illegal. The driver was arrested and convicted for driving under the influence of alcohol. Since there was no evidence of any traffic infraction justifying the stop, *Rohde* considered the community caretaking exception. *Rohde* noted that the two cases in Nebraska which had applied the community caretaking exception to permit traffic stops without unlawful conduct had involved situations in which "the individual potentially requiring assistance was the driver," rather than a passenger in the vehicle. *Id*. at 934, 864 N.W.2d at 710. *Rohde* concluded that the community caretaking exception is "equally applicable to drivers and passengers or occupants of a vehicle." *Id*. at 942, 867 N.W.2d at 715. Again, *Rohde* demonstrates that when considering the totality of the circumstances, the officer's concern was also supported by objective observations and considerations surrounding the stop which demonstrated that this was an exigent circumstance warranting the stop to make sure the observed female was not in distress.

All of the Nebraska cases considering the community caretaking doctrine have required objectively observable emergency or exigent circumstances. In the present case, the majority focuses largely on Shepler's subjectively stated reason--he was concerned about Rivera driving into other people in the park located 15 to 20 feet away. However, the objective evidence shows that Rivera's vehicle was moving very slowly, in fact, so slowly that Shepler had time to exit his vehicle and walk around the front of it, and then walk towards Rivera's vehicle to stop it, apparently without fear that he would be struck. Further, Shepler conceded that Rivera could have maneuvered his vehicle back onto the paved roadway without striking anyone. The majority states that "a moving vehicle at any speed is inherently dangerous to pedestrians and a collision can be fatal." If this is to be the test, then every moving, lawfully operated vehicle becomes subject to being stopped under the community caretaking exception if, for example, an officer's stated reason for the stop was his or her belief that the driver may not have observed pedestrians crossing the street down the road, even though the vehicle was moving at an extremely slow speed.

My dissent favors a narrow application of the community caretaking exception which would not frustrate the important noninvestigatory functions of our law enforcement agencies. There is no question that emergency or exigent circumstances will arise in which law enforcement will need to act quickly to protect lives and prevent injuries while engaged in community caretaking functions. However, the community caretaking exception should only be applied when those emergency or exigent circumstances are supported by both the officer's subjective concerns

(based on the officer's training and experience), and the objective observations and considerations surrounding the emergency or exigency, when viewing the totality of the circumstances. The objective observations and considerations in this case do not support an emergency or exigent circumstance being created by Rivera's vehicle slowly passing Shepler's vehicle. A narrow and careful application of the community caretaking exception does not justify the traffic stop in this case.